**Walter E. WINKELMAN and Paul F. Becker, Plaintiffs-Appellants,**

**v.**

**BLYTH & CO., INC., a Delaware Corporation, Defendant-Respondent.**

**Elmer G. ANDERSON et al., Plaintiffs-Appellants,**

**v.**

**BLYTH EASTMAN DILLON & CO. (Blyth & Co., Inc.), a Delaware Corporation, et al., Defendants-Respondents.**

**No. 74–1203.**

United States Court of Appeals, Ninth Circuit.

June 10, 1975.

Rehearing Denied July 11, 1975.

Certiorari Denied Nov. 3, 1975. See 96 S.Ct. 278.

William B. Murray (argued), Portland, Ore., for plaintiffs-appellants.

Leigh D. Stephenson (argued), Portland, Ore., for defendant-respondent.

OPINION

Before KOELSCH and ELY, Circuit Judges, and VOORHEES,* District Judge.

KOELSCH, Circuit Judge.

In these actions for violations of the federal securities laws and for common

* The Honorable Donald S. Voorhees, United States District Judge for the Western District of Washington, sitting by designation.

law fraud, the District Court for the District of Oregon (1) ruled that Oregon's two-year statute of limitations, Ore.Rev. Stat. § 12.110(1), and not the State's six-year statute, Ore.Rev.Stat. § 12.080, was applicable to the federal and common law claims; (2) concluded as a matter of law that the alleged fraud or deceit upon which the actions were based had been discovered by plaintiffs more than two years before the actions were filed; and hence (3) granted the summary judgments in favor of defendants from which this appeal is taken. We affirm based on the well reasoned opinion of the court below, 394 F.Supp. 994 (D.Ore., 1973).

On appeal plaintiffs vigorously argue that summary judgment was improper because it cannot be said as a matter of law that the statute of limitations ran as to the defendants' alleged failure to disclose they were market makers and the extent to which they were financially interested in the consummation of the stock sales. We disagree. As recognized in Chasins v. Smith, Barney & Co., 438 F.2d 1167, 1172 (2d Cir. 1970), the significance of such nondisclosures arises from their probable impact on an investor's assessment of the broker's representations regarding the worth of the stock and of his recommendation to buy or sell.[1] Here, the statute of limitations began to run when plaintiffs discovered the falsity of defendants' representations as to the worth of the stock, and thus the unreliability of defendants' initial recommendation to purchase; under the

circumstances, that discovery gave plaintiffs sufficient notice that they had been defrauded or deceived to commence the running of the statute as to the actions in their entirety. The mere fact that plaintiffs had not then discovered defendants' alleged undisclosed interests did not toll the statute, nor did plaintiffs' subsequent discovery of the alleged omissions commence its running anew.

Affirmed.

---

1. In Chasins the Second Circuit said at 1172:

"Knowledge of the additional fact of market making by Smith, Barney in the three securities recommended could well influence the decision of a client in Chasins' position, depending on the broker-dealer's undertaking to analyze and advise, whether to follow its recommendation to buy the securities; disclosure of the fact would indicate the possibility of adverse interests which might be reflected in Smith, Barney's recommendations. Smith, Barney could well be caught in either a 'short' position or a 'long' position in a security, because of erroneous judgment of supply and demand at given levels. If over supplied, it may be to the interest of a market maker to attempt to unload the securities on his retail clients. Here, Smith, Barney's strong recommenda-

tions of the three securities Chasins purchased could have been motivated by its own market position rather than the intrinsic desirability of the securities for Chasins. An investor who is at least informed of the possibility of such adverse interests, due to his broker's market making in the securities recommended, can question the reasons for the recommendations. The investor, such as Chasins, must be permitted to evaluate overlapping motivations through appropriate disclosures, especially where one motivation is economic self-interest. See SEC v. Capital Gains Research Bureau, Inc., 375 U.S. 180 at 196, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963)." See also Affiliated Ute Citizens v. United States, 406 U.S. 128, 153–154, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), and cases cited therein.